GREEN *v.* GREEN.

[Cite as Green v. Green, 9 Ohio Misc. 15.]

(No. 658815—Decided November 18, 1966.)

Probate Court, Cuyahoga County.

*Mr. Jack F. Smith,* for plaintiff.
*Mrs. Eileen Flynn,* guardian ad litem, for defendant.

ANDREWS, Chief Referee.   This is an action for a declaratory judgment, in which plaintiff asks for a construction of Item III, paragraph (6) of the will of Roy C. Green, and for judgment declaring that the provisions therein for termination of the trust violate the rule against perpetuities and are therefore void.   He contends also that the provision for termination of the trust upon the death of defendant Helen Green is against public policy and void.

The petition was filed on June 24, 1964, and the case was partially heard by another referee on October 13, 1965.   The matter was referred to me on September 14, 1966.

Apparently as a result of the October 1965 hearing, plaintiff filed a second brief, in which new points were argued. I will postpone consideration of these additional points until I have disposed of the issues raised in the petition and in plaintiff's original brief.

Roy C. Green executed his will on December 22, 1952. A codicil was executed on September 7, 1954, but it does not affect the legal problems involved.

Mr. Green died on July 24, 1955. He was survived by his only child, Richard C. Green; by a sister, Helen Green; and by Richard's wife, Elsie L. Green, and their three children, William, Judith, and Betsy.

Counsel for plaintiff has given us the birthdays of these three children. They are as follows: William, February 1, 1941; Judith, May 21, 1942; Betsy, July 28, 1947.

On August 3, 1955, testator's son, Richard, was appointed executor of his father's estate. On March 7, 1958, he was appointed trustee of the trust created by Item III of his father's will, and he has continued to serve as such since that time. However, he brings the present action as an individual rather than as a fiduciary.

Plaintiff's petition is based upon Item III, paragraph (6) of the will. For a proper understanding of the issues, it is necessary to refer to four previous paragraphs of that item.

By Item III, testator gives all the rest and residue of his estate, real and personal, to his son, Richard C. Green, in trust.

Paragraph (1) of Item III directs the trustee to pay to testator's sister, Helen Green, "so long as she shall live," $375 quarterly (reduced by the codicil to $300) from the net income derived from the trust.

Paragraph (2) directs the trustee to pay all of the net income derived from the trust not paid to testator's sister, to his son, in quarterly installments "so long as he shall live."

Paragraph (3) directs that after the death of testator's son, the trustee shall pay all the net income derived from the trust not paid to testator's sister, to his daughter-in-law, Elsie L. Green, "if she shall be married to my said son at the date of his death, so long as she shall live and remain unmarried."

Paragraph (4) reads as follows:

"After the death of my said son and the death or remar-

riage of my said daughter-in-law, I direct the Trustee to pay the net income derived from the said trust not paid to my said sister to the lineal descendants of my son, *per stirpes*."

For purposes of clarification, mention should be made here of Item III, paragraph (12), by which, if Richard for any reason ceases to act as trustee, testator appoints his daughter-in-law as trustee; and if she fails to qualify or ceases to act as such, testator appoints the Central National Bank of Cleveland as trustee.

We come now to the controversial paragraph (6) of Item III, which I quote.

"(6) The trust shall terminate upon the last to happen of the following counts:

"(a) The death of my son, Richard C. Green.

"(b) The death or remarriage of Elsie L. Green.

"(c) The day the youngest living child of my son, Richard C. Green, in being on the date of my death, attains twenty-five (25) years of age.

"(d) The death of my sister, Helen Green.

"Upon the termination of the trust, the Trustee shall assign, transfer, convey and deliver all of the property then comprising the trust to the lineal descendants of my son, Richard C. Green, *per stirpes*."

As already mentioned, plaintiff contends in his petition that the provision for the termination of the trust upon the death of Helen Green is against public policy and void. He also contends that the provision that the trust terminate on the day the youngest living child of Richard C. Green, in being on the date of the testator's death, attains the age of twenty-five, violates the rule against perpetuities and is void.

As to the first contention, no reason or argument is given, and the point is not mentioned in either of plaintiff's briefs. As noted, paragraph (6) provides for the termination of the trust upon the last of four occurrences, designated as "counts." Hence, if Helen Green's death is the last of these, the trust will then terminate. I can think of no reason for holding such a provision contrary to public policy and void. In my opinion, the provision is valid.

With reference to plaintiff's second contention, the Ohio Legislature has codified the common-law rule against perpetui-

ties in Section 2131.08, Revised Code, the pertinent parts of which are here quoted.

"No interest in real or personal property shall be good unless it must vest, if at all, not later than twenty-one years after a life or lives in being at the creation of the interest. * * * It is the intention by the adoption of this section to make effective in Ohio what is generaly known as the common law rule against perpetuities."

The gift of the trust corpus to "the lineal descendants of my son, Richard C. Green, *per stirpes,*" is a class gift. Although the rule against perpetuities is concerned with vesting, there is an additional requirement in the case of a class gift that the class must be certain to close within the prescribed period.  6 American Law of Property, Section 24.3; 42 Ohio Jurisprudence 2d, Perpetuities, Section 50; 4 Restatement, Property, Sections 371, 383; Simes and Smith, Future Interests, Section 1265 (2d ed. 1956).  And obviously the closing of the class results in the vesting of the interests if they have not vested previously.

Under the provisions of paragraph (6), it is clear that upon the happening of the last in time of the events there enumerated, the trust property will vest immediately in the lineal descendants of Richard Green, and the class will close.

Apparently, plaintiff concedes that if the last of the four events to occur is his own death, the death or remarriage of his wife, or the death of testator's sister, the vesting and closing of the class will be in time under the rule against perpetuities.  Indeed, this is the only possible conclusion.  But he claims that if the above three events happen first, leaving us, so to speak, with subparagraph (c) of paragraph (6), the rule will be violated.

In the ensuing discussion, it is assumed that the events set forth in subparagraphs (a), (b), and (d) have taken place prior to the event set forth in subparagraph (c).

Because this perpetuities problem relates to a will, we are in the odd position of having to go back in time to July 24, 1955, the date of testator's death; and in deciding the question of remoteness, we must start with the facts as they existed on that date.  Gray, Rule Against Perpetuities, Section 231 (4th ed. 1942); Simes and Smith, Future Interests, Section 1228, page 118 (2d ed. 1956); 42 Ohio Jurisprudence 2d, Perpetuities, Section 25; 4 Restatement, Property, Section 374, Comment *b*; 41

American Jurisprudence, Perpetuities and Restraints on Alienation, Section 19.

Thus, we are not permitted to commence our computation by assuming a hypothetical state of facts contrary to the real factual situation existing at the time of the testator's death.

Bearing in mind, then, the factual situation present on the day the testator died, we must determine whether any *possible* combination of future events, within the scope of the clause or clauses in question, would postpone the vesting beyond the permissible time. The rule is neatly put by Simes and Smith:

"In applying the rule against perpetuities to contingent future interests, the question is not: Will the future interest probably vest within the period? Rather it is this: Must it necessarily vest within the period, if it vests at all?" Simes and Smith, Future Interests, Section 1228, page 118 (2d ed. 1956).

Oddly enough, in implementing the principle that possibilities, not probabilities, are what count in determining remoteness in vesting, the law regards some things as possible even though science may have declared them physically impossible. For example, women are deemed capable of bearing children as long as they live, and, similarly, men are deemed capable of insemination no matter how old they may be. See Gray, Rule Against Perpetuities, Section 215 (4th ed. 1942). As remarked by counsel for the plaintiff, this is often referred to as the doctrine of the fertile octogenarian.

In considering possibilities, we must shut our eyes to what has actually happenend since the testator's death. For instance, we know that William, the oldest child of Richard Green, has already attained the age of twenty-five; but in determining whether or not subparagraph (c) of paragraph (6) violates the rule against perpetuities, we are not permitted to take cognizance of this fact.

Let us see, then, how subparagraph (c) of paragraph (6) fits into the applicable rules of law. It will be recalled that this subparagraph provides for the termination of the trust, with the resultant distribution to the lineal descendants of Richard Green, on the day the youngest living child of Richard Green, *in being on the date of testator's death,* attains the age of twenty-five.

It is important to note that the time for distribution is

linked solely with the three children in being on the date of testator's death, although the class of beneficiaries, *i. e.,* lineal descendants of Richard Green, is not limited to those three.

Whether the phrase "youngest living child" refers only to Betsy, or means the youngest of the three children to reach twenty-five (a question not necessary to decide in this proceeding), there is clearly no violation of the rule against perpetuities, for, in either case, paragraph (6) and subparagraph (c) thereof, taken together, provide for the closing of the class and the consequent vesting of the remainders *during* a life in being at the death of the testator, and this is much sooner than the requirement of the rule against perpetuities.

But plaintiff argues that the interest of the class is contingent upon the occurrence of the last of the four events, which, by hypothesis in this proceeding, is the attainment of age twenty-five by the youngest living child of Richard Green in being at testator's death. Apparently, plaintiff takes the position that if all three of the designated children die before reaching twenty-five, a condition precedent to the vesting of the remainder will not have been met, as a consequence of which the remainder will never vest, resulting, in turn, in a violation of the rule against perpetuities.

Assuming for the moment that plaintiff is correct in his assertion that under the above circumstances the remainder will never vest, such a failure to vest is unrelated to the rule against perpetuities.

As observed by Simes and Smith:

"It should be pointed out that the requirement that a future interest must vest within the period of the rule does not mean that the interest must certainly vest. The requirement is that it must vest, *if at all,* within lives in being and twenty-one years." Simes and Smith, Future Interests, Section 1228, page 123 (2d ed. 1956).

See, also, 6 American Law of Property, Section 24.3, page 13; 42 Ohio Jurisprudence 2d, Perpetuities, Section 21.

In any event, I do not believe that the attainment of age twenty-five by the youngest living child of Richard Green in being on the date of testator's death, was intended to be a condition precedent to the vesting of the remainder. There is nothing in the language of paragraph (6) justifying such an inter-

pretation. The attainment of age twenty-five was merely one of the "counts" or events, upon the happening of the last of which the remainder was to vest. Subparagraph (c) was nothing more than one element of a time schedule for the termination of the trust, not a condition precedent to the vesting of the remainder.

After all, the remainder was "to the lineal descendants of my son, Richard C. Green, *per stirpes.*" It was not limited to the three children alive at testator's death. Certainly, if the deaths of the three children prior to attaining twenty-five occurred *before* one or more of the other events listed in paragraph (6), it could not be maintained that the remainder failed by reason of the nonfulfillment of a condition precedent. Then how can a condition precedent suddenly arise because the other three events happen first? It would be wholly unreasonable to conclude that the testator intended to cut off the other lineal descendants of Richard Green, merely because William, Judith, and Betsy died before reaching twenty-five. Such a finding would result in the distribution of the trust estate as intestate property, despite the presence of lineal descendants, and there is nothing even remotely suggesting such an intention.

I hold that the attainment of age twenty-five by the youngest living child of Richard Green in being at testator's death is not a condition precedent to the termination of the trust, the closing of the class, and the vesting of the remainder.

Where a trust is to terminate at the time when a designated person attains a specified age, courts have construed this to mean that if the person dies before attaining the required age, the trust terminates immediately upon his death. *In re Fishberg's Will*, 285 N. Y. Supp. 303 (Surr. Ct. 1936); *Sammis v. Sammis*, 14 R. I. 123 (1883); *Butler v. Butler*, 40 R. I. 425, 101 Atl. 115 (1917).

Other courts have held that the trust terminates when the designated person would have attained the specified age had he lived that long. *In re Clark's Estate*, 13 N. J. Misc. 393, 178 Atl. 574 (Orphans' Court 1935); *Stein v. United States National Bank of Portland* (1941), 165 Oreg. 518, 108 P. 2d 1016.

Basically, the court is trying to find the intention of the testator, and this is reflected in the authorities cited.

Fortunately, we need not analyze the cases to see whether

they can be reconciled, nor need we choose between the two views, for under either view the trust in the present case will terminate, the class will close, and the remainders will vest within twenty-one years after lives in being at the date of the testator's death. Under the first view, this conclusion is obvious. And all we need do in considering the second view is to look at the ages of Richard Green's three children at the time of the testator's death. The conclusion under the second view then becomes as obvious as that under the first view.

Plaintiff also contends that the rule against perpetuities is violated because there may be no lineal descendants in existence when the trust terminates. Here, again, plaintiff confuses the rule against perpetuities with the failure of a remainder. Two brief quotations will clarify the point. The second quotation has been used previously, but is repeated here for the convenience of the reader.

"* * * If no one who answers the description is in existence when the gift is to vest, it fails." 4 Bowe-Parker, Page on Wills, Section 35.12, page 527.

"It should be pointed out that the requirement that a future interest must vest within the period of the rule does not mean that the interest must certainly vest. The requirement is that it must vest, *if at all,* within lives in being and twenty-one years." Simes and Smith, Future Interests, Section 1228, page 123 (2d ed. 1956).

I hold that paragraph (6) of Item III of the will does not violate the rule against perpetuities.

In his second brief, filed after the partial hearing, plaintiff raises two additional points. Only one of them need be considered.

By Item II, the testator bequeaths to his son, Richard C. Green, "all of my chattel property."

Item III reads in part:

"All of the rest and residue of my estate, real and personal, * * * I give, devise and bequeath to my son, Richard C. Green, in trust * * *"

In essence, plaintiff's contention is that the bequest in Item II disposes of all the personal property owned by the testator at the time of his death, with the result that there was no property left to go into the trust created by Item III.

The inventory and appraisal filed in the estate proceedings listed the following classifications of property:

Personal goods and chattels:        None
Bank deposits and money:        1,612.19
Stocks, bonds, and securities:        157,098.96
_____
Total        $158,711.15

It is obvious that if plaintiff is to prevail, all this property must be included in the words "chattel property."

Interestingly enough, as above noted, the inventory itself recites that there are no chattels.

In modern usage the word "chattels" is ordinarily limited to visible, tangible, movable personal property. 42 American Jurisprudence, Property, Section 24; *In re Cross* (1933), 205 N. C. 160, 170 S. E. 660. Admittedly, it may be used in a broader sense, and whether it is used in a broad or restricted sense is to be determined as a matter of construction. *Lynn v. Stricker* (Mo. App. 1948), 213 S. W. 2d 672.

In the instant case, where the term "chattel property" is used in one item, and the residuary clause includes the residue of testator's estate, "real and personal," it is clear that testator used the term "chattel property" in its restricted sense. If he intended "chattel property" to include all his personal property, there would be no reason for him to mention personal property in the residuary clause. See *Lynn v. Stricker, supra.*

*Conclusions of Law*

1. The provision in Item III, paragraph (6), subparagraph (d), by which the death of testator's sister, Helen Green, is one of the events upon the last of which the trust is to terminate, is not against public policy, and is valid.

2. Item III, paragraph (6), subparagraph (c) does not violate the rule against perpetuities, and is valid.

3. Item II of the will, bequeathing all of testator's "chattel property" to his son, Richard C. Green, was not intended to pass the bank deposits, money, stocks, bonds, and securities owned by the testator at the time of his death, and such property was properly transferred by the executor to Richard C. Green as trustee, under the provisions of Item III of the will.

*Judgment accordingly.*